**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

United States of America,

v.                                                    Case No. 1:24-cr-290-MLB

Leterence Bembry,

                    Defendant.

_____/

## <u>ORDER</u>

The United States charged Defendant Leterence Bembry with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841 and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922.  (Dkt. 1.)  Defendant Bembry moved to suppress evidence seized from his vehicle during a traffic stop, arguing police had no reason to stop him.  (Dkts. 23, 29, 31.)  The Magistrate Judge issued a report, recommending denial of the motion.  (Dkt. 119.)  Defendant Bembry objects.  (Dkt. 125.)  The Court overrules his objections and adopts the Magistrate Judge's recommendation.

## I.    Background

On September 16, 2022, Sergeant Nicholas Marinelli stopped Defendant Bembry after seeing the driver-side brake light on Defendant Bembry's car was not working. (Dkt. 45 at 13.) When he approached the car, Defendant Bembry rolled down his window. (*Id*. at 13.) Sergeant Marinelli immediately smelled "a very strong odor of unburnt marijuana coming from the vehicle" and saw an open beer in the cup holder. (*Id*. at 13, 17.) Defendant Bembry provided a driver's license bearing the name Michael Eugene Marcus Cole. (*Id*. at 16.)

Sergeant Marinelli's body camera captured the ensuing interaction. The officer asked Defendant Bembry to step out of the car, Defendant Bembry asked why he had to get out of the car, and the officer said "you got weed in the car and I can see the beer in the cupholder there." (Dkt. 113 at 0:58–1:06.) Defendant Bembry then got out of the car. (*Id*.) Back by the police car, Sergeant Marinelli asked Defendant Bembry whether he had marijuana in the car. (*Id*. at 1:45–1:55.) Rather than answering, Defendant Bembry asked why the officer had stopped him, and Sergeant Marinelli answered, "I stopped you because your brake light's out." (*Id*.) Defendant Bembry denied that and motioned to his

illuminated taillights.   (*Id.* at 2:00.)   The officer explained he was referring to the brake light that illuminates when the driver hits the brake pedal.  (*Id.* at 2:08.)  Sergeant Marinelli said he intended to search the car after another officer arrived.  (*Id.* at 2:20.)  Defendant Bembry denied having any marijuana in his car. (*Id.* at 3:00.)  Sergeant Marinelli asked, "you sure nothing in the car," Defendant Bembry responded, "go ahead, you can search it," and the officer replied, "I know I can 'cause I can smell it . . . ."  (*Id.* at 3:33–3:42.)

Officer Davis arrived on the scene.  (*Id.* at 5:00.)  The officers again asked Defendant Bembry if he had drugs in his car, and Defendant Bembry again asked why he had been stopped.   (*Id.* at 5:22–5:27.) Sergeant Marinelli repeated: "just like I told you, because your brake light's out."  (*Id.*)  Sergeant Marinelli then offered to demonstrate the problem: "if you want, I'm gonna go and hit on the brake light and you can see what I'm talking about."  (*Id.* at 5:27–5:31.)  Defendant Bembry responded: "please."  (*Id.* at 5:33.)

Officer Davis's body-camera captured the rear of the vehicle during the demonstration.  (Dkt. 116 at 1:25–1:30.)   It shows that, when Sergeant Marinelli pressed the brake pedal, the brake light in the center

of the rear spoiler illuminated but the driver-side brake light did not—thus confirming Sergeant Marinelli's contention that the brake light was not working. (*Id.* at 1:26.) Sergeant Marinelli said, "see that?" (*Id.* at 1:29.) Defendant Bembry did not respond. (*Id.*)

Sergeant Marinelli returned to Defendant Bembry, told him to turn around, and placed him in handcuffs. (*Id.* at 1:30–1:55.) At the same time, he signaled "69"—code for a weapon—to Officer Davis. (*Id.* at 1:41; Dkt. 45 at 18.) At an evidentiary hearing, Sergeant Marinelli explained that, when he leaned into the car to press the brake pedal, he saw a gun in the driver's seat. (Dkt. 45 at 18–19.) Sergeant Marinelli told Defendant Bembry he was under arrest for possessing the firearm. (Dkt. 113 at 7:10–7:15.)

At a second evidentiary hearing, Defendant Bembry presented testimony from an investigator who testified that neither the officer's so-called CAD report from the night nor the dispatch recording mentioned a faulty brake light. (Dkt. 99 at 41–42.) Defendant Bembry also presented testimony from his mechanic (Kenneth Smith), who testified he replaced the car's lights two days before and confirmed the brake lights were working. (*Id.* at 36.)

The Magistrate Judge concluded the United States presented evidence that Defendant Bembry's driver-side brake light was not working on the night of the stop and that Sergeant Marinelli stopped him because of that traffic infraction. (Dkt. 119 at 8.) She also concluded Officer Davis's bodycam footage corroborated Sergeant's Marinelli's testimony. (*Id.* at 9.) Although finding the mechanic credible and acknowledging the absence of any reference to the brake light in the CAD report, she concluded that evidence did not overcome the United States's evidence that the brake light was out. She thus concluded Sergeant Marinelli reasonably believed Defendant Bembry violated O.C.G.A. § 40-8-25(b) by operating a vehicle with a non-functioning brake light. (*Id.* at 14–15.) So, she recommends denial of Defendant Bembry's motion to suppress. (*Id.*) Defendant objects. (Dkt. 125.)

## II. Standard of Review

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination

of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district judge should "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted). For those findings and recommendations to which a party has not asserted objections, the court must conduct a plain error review of the record. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983). Parties filing objections to a magistrate judge's recommendation must identify those findings to which they object. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). "Frivolous, conclusive, or general objections need not be considered by the district court." *Id.*

## III. Discussion

A traffic stop is a seizure under the Fourth Amendment. *See United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009). To justify a traffic stop, an officer must have a reasonable suspicion the driver committed criminal activity. *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (citing *Heien v. North Carolina*, 574 U.S. 54, 61

(2014)).[1]   Even minor traffic violations suffice.   *Id.*   Courts assess reasonable suspicion from the standpoint of an objectively reasonable police officer under the circumstances.   *See United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003); *see also United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012) ("[A] court must examine the totality of the circumstances in order to determine whether a search or seizure is reasonable under the Fourth Amendment."). "Upon a motion to suppress evidence garnered through a *warrantless* search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution." *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983).

---

[1] Courts previously debated whether officers needed probable cause or reasonable suspicion for this type of stop.   The Eleventh Circuit addressed this in *Campbell,* noting its prior statement in *United States v. Pierre*, 825 F.3d 1183, 1192 (11th Cir. 2016) that, "[p]ursuant to the Fourth Amendment, police may stop a vehicle if they have probable cause to believe that a traffic violation has occurred" and the Supreme Court's statement in *Whren v. United States*, 517 U.S. 806, 809–10 (1996) that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."   *See Campbell*, 26 F.4th at 880 n.15.   The Eleventh Circuit, however, noted the Supreme Court in *Heien* "made clear that reasonable suspicion is all that is required." *Id.* "[P]robable cause is sufficient, [but] only reasonable suspicion is necessary." *Id.*

"To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." *Heien*, 574 U.S. at 60–61. Under the so-called *Heien* doctrine, a reviewing court can find an officer acted with a reasonable suspicion of unlawful behavior even if a police officer misunderstood the lawfulness of the defendant's conduct so long as the officer's misunderstanding was reasonable. *United States v. Braddy*, 11 F.4th 1298, 1309 (11th Cir. 2021) ("We need not determine whether [the police officer's] interpretation of the relevant Alabama statutes is correct because, even assuming [the statute] does not apply to nonresident motorists, we find [the officer's] contrary interpretation to be objectively reasonable.").

Defendant Bembry objects to both the Magistrate Judge's conclusion that the United States presented evidence Sergeant Marinelli stopped him for having a faulty brake light and that such an observation (if correct) permitted the traffic stop.

**A.   Sergeant Marinelli Reasonably Believed the Brake Light Was Broken**

The Magistrate Judge credited Sergeant Marinelli's testimony that he stopped Defendant Bembry after noticing a broken brake light. Defendant Bembry argues the Magistrate Judge clearly erred because "the weight of the objective record evidence and witness's own admissions" contradict his testimony.  (Dkt. 125 at 1.)  He says Sergeant Marinelli's testimony cannot "bear the evidentiary weight" the Magistrate Judge places on it.  (*Id.* at 3.)  He cites four things in support of this attack.

First, he says the Magistrate Judge improperly credited Sergeant Marinelli's testimony that the brake light was out because the witness gave "flatly contradictory testimony about when and how he made that observation across the two evidentiary hearings."  (Dkt. 125 at 3.)  In the first hearing, Sergeant Marinelli testified he first noticed the light was not working when he was behind Defendant Bembry, they "slowed for traffic," and the brake lights other than the driver's brake light illuminated.  (Dkt. 45 at 20.)  At the second hearing, he said "when I observed the brake light out, we were stopped, and once we started moving is when I initiated the stop."  (Dkt. 99 at 11–12.)  In the report

9

and recommendation, the Magistrate Judge noted this but concluded "any 'inconsistency' in the testimony regarding when Sergeant Marinelli first noticed the non-functioning brake light is not material given the credible, corroborated testimony that the driver-side brake light was not functioning at the time of the stop and the uncontroverted testimony that Sergeant Marinelli was behind Defendant Bembry in a position to see the rear of the car." (Dkt. 119 at 10 n.5.)  Defendant Bembry disagrees and argues the Magistrate Judge was improperly "speculating 'that both vehicles stopped in preparation for a turn,'" which amounts to rehabilitating a witnessed "by constructing a third narrative that the witness himself never offered." (Dkt. 125 at 3.)  He characterizes this as "speculative reconciliation." (*Id.* at 4.)

The Court disagrees.  For starters, the Court cannot find the alleged quote about the Magistrate Judge speculating that both vehicles stopping for a turn in the report and recommendation.  It does not appear the Magistrate Judge did that, at least not in the written order.  Instead, the Magistrate Judge explained any discrepancy was insufficient to outweigh her assessment of Sergeant Marinelli's credibility as a witness in the light of the overwhelming evidence that the brake light was out—most

10

notably the evidence from Officer Davis's body camera of Sergeant Marinelli demonstrating the non-functioning brake light.

The Court agrees this real-time evidence is powerful. The Court adds that Sergeant Marinelli identified a problem with the brake light the moment Defendant Bembry asked him why he had stopped him and repeated that explanation several times. Both cameras thus corroborate Sergeant Marinelli's testimony that he stopped Defendant Bembry for driving with a broken brake light. The Court also notes no one confronted Sergeant Marinelli with this alleged discrepancy or even pointed it out to him so he could offer some reconciliation. The Court is not suggesting Defendant Bembry was required to do so. But in the absence of any effort to probe this issue, the Court—like the Magistrate Judge—does not find this apparent discrepancy sufficient to outweigh the significant evidence that the brake light was broken.

Second, Defendant Bembry argues both videos contradict the Magistrate Judge's factual finding that the brake light was not working. He says Sergeant Marinelli's video shows "red illumination visible across the rear light assemblies," suggesting this shows three working brake lights. (Dkt. 125 at 4.) He argues this evidence contradicts Sergeant

11

Marinelli's claim the light was out and the Magistrate Judge improperly discounted this discrepancy by saying the police car's lights made it impossible to see whether the brake lights were illuminated. (*Id.* at 4–5.) He says that, since this video "leaves the question open," the United States has not carried its burden of proof.

Not so. The video shows the rear of Defendant Bembry's car with three (seemingly) equally illuminated lights. But it was nighttime and Defendant Bembry had his headlights on, thus illuminating his rear tail lights. Brake lights—as everyone knows—becomes brighter when a driver hits the brake pedal. There is no evidence that, after stopping the car, Defendant Bembry kept his foot on the brake, rather than placing his car in park. So the Court agrees this video provides no evidence as to the functionality of the brake light. And that is exactly what the Magistrate Judge noted.

The important evidence arises from Officer Davis's body camera when Sergeant Marinelli pushed the brake pedal. Defendant Bembry says this video shows all three brake lights illuminated. (Dkt. 125 at 5.) As part of this, he references a moment in the hearing when the Magistrate Judge noted she saw "three red flashes"—according to

12

Defendant Bembry—meaning two side brake lights and the center brake light. (*Id*) The Magistrate Judge addressed this exact issue in the report and recommendation. She explained she made the statement while trying to understand what defense counsel was trying to show her and was referring to the three illuminated *tail lights* on the back of the car. (Dkt. 119 at 9 n.4.) She was not referring to brake lights. (*Id.*) She further explained—unequivocally—that when she reviewed the video in chambers "it was clear to [her] that the red light on the driver's side was a tail light that did not become brighter when the brake pedal was depressed, unlike the center brake light that illuminated when the brake pedal was depressed." (*Id.*) Defendant Bembry does not explain why this observation is inaccurate. And the Court—having watched the video several times—certainly sees that the rear brake light on the driver's side of the car did not illuminate when Sergeant Marinelli pushed the brake pedal and causes the middle brake light to illuminate. It is strange for Defendant Bembry to raise this objection without acknowledging the fact the Magistrate Judge addressed (and clarified) the exact issue.

Third, Defendant Bembry contends the Magistrate Judge erred in dismissing the absence of contemporaneous documentation of the broken

brake light in the CAD report or the audio of Sergeant Marinelli's interaction with dispatch. (Dkt. 125 at 5.) He says the Magistrate Judge "invert[ed] the burden of proof" in noting the absence of such documentation does not mean his lights were working. (*Id.*) Defendant Bembry insists the absence of this documentation suggests Sergeant Marinelli did not, in fact, stop him for having a broken brake light. No evidence supports that inference. No one testified an officer would typically include the basis for the stop in either the CAD report or the dispatch transmission. Defendant offered no evidence whatsoever about normal police procedure but seems to assume that detail would be included. And, the CAD report identifies the "Nature" of the event as "87 Traffic Stop"—which (it seems) confirms the stop was for some type of traffic infraction. (Dkt. 114-2 at 2.) The rest of the report seems to include extensive detail of the officers' activities, like entering the license plate, the second officer's arrival, recovery of the gun from the car, a query of Defendant Bembry's driving history, and (perhaps) his transport to jail. (*Id.*) In the absence of testimony as to the purpose of the report, what detail it should contain, and the interpretation of various codes contained therein, the Court rejects Defendant Bembry's unsupported

14

assumption that the report should have identified a broken brake light as the basis for the stop.  The same is true of the dispatch recording, which is not even in evidence.[2]  The Court agrees with the Magistrate Judge's conclusion that—under this record—the absence of evidence is not evidence of absence.

Finally, Defendant Bembry says the Magistrate Judge erred in concluding the mechanic's credible testimony "cannot overcome Sergeant Marinelli's credible account and the video evidence." (Dkt. 125 at 6.)  He insists, the mechanic's testimony provides "positive unrebutted evidence" the brake light was working and prevents the Court from crediting Sergeant Marinelli and the video. (*Id.*)  Again, the Court disagrees. Two things can be right.  Smith may well have fixed (or thought he fixed) the brake light and it could have been broken two days later.  So Smith's testimony (even if credible) does not prevent the Court from also crediting Sergeant Marinelli's credible testimony.  And it does not require the

---

[2] Defendant Bembry simply asked the investigator if he listened to the call and whether anyone talked "about a faulty brake light," without any information about what was said or whether a radio code could have been used, let alone testimony about whether an officer would typically provide that detail to dispatch.  (Dkt. 99 at 42.)

Court to disregard its own observations that the brake light did not brighten when Sergeant Marinelli hit the brake pedal.

The Court overrules Defendant Bembry's objection and adopts the Magistrate Judge's conclusion that the United States met its burden of showing Sergeant Marinelli reasonably believed one of Defendant Bembry's brake lights was not working when he initiated the traffic stop.

**B.    Sergeant Marinelli Had a Reasonable Suspicion Defendant Bembry Violated a Traffic Law**

One Georgia law states that a driver may not operate a car unless it has at least one working brake light but, if equipped with two lights, both must be working.  *See* O.C.G.A. § 40-8-25.  Another states that a car must have a brake light on the rear that emits a light when the foot brake is pressed.  *See* O.C.G.A. § 40-8-26.  Before the Magistrate Judge, Defendant Bembry argued that, read together, these statutes only require a driver to have two functioning brake lights and that, even if his driver-side brake light was out, he still had two functioning brake lights (one in the middle of the spoiler and one on the passenger side).  (Dkt. 107 at 11–12.)  So, Defendant Bembry argues he did not violate Georgia law and Sergeant Marinelli had no reason to think otherwise.  (*Id.*)

16

The Magistrate Judge rejected this argument, concluding that, even if Defendant Bembry's interpretation of the law was correct, Sergeant Marinelli still had a good-faith, reasonable belief Defendant Bembry broke the law.  (Dkt. 119 at 15.)  In reaching this conclusion, the Magistrate Judge cited Georgia cases recognizing this potential conflict between the statutes and finding it reasonable for a police officer to believe a driver of a car with a broken brake light is violating Georgia law, even if the car still has two functioning brake lights.  (*Id.* at 12–14 (citing *Lancaster v. State*, 582 S.E.2d 513, 515 (Ga. Ct. App. 2003) ("the fact that one of the brake lights on [the defendant's] car was not functioning was, in itself, sufficient articulable reasonable suspicion of the illegal operation of his vehicle to authorize a traffic stop" even if officer was operating under incorrect legal theory) and *State v. Cartwright*, 764 S.E.2d 175, 177–78 (Ga. Ct. App. 2014) (officer acted with good-faith belief defendant violated O.C.G.A. § 40-8-25(b) even if "the defendant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute")).)

Defendant Bembry objects to this conclusion.  He argues the "physical evidence unambiguously demonstrates" his driver-side brake

17

light was working, thus precluding any reasonable belief by Sergeant Marinelli that it was not. (Dkt. 125 at 7.) He also argues this evidence prevents the United States from relying on his mistaken belief under the *Heien* doctrine to legitimize the stop. Because the Court rejects Defendant Bembry's premise (that the brake light was working), the Court also rejects his argument.

Defendant Bembry next argues Sergeant Marinelli conceded his understanding of the law was incorrect while testifying before the Magistrate Judge, thus preventing him from claiming any good-faith reliance on a reasonable mistake of law. (Dkt. 125 at 9.) This is a red herring. Sergeant Marinelli's testimony in court when confronted by a lawyer with certain statutes and asked to reconcile the lawyer-assisted reading of the law with his prior understanding does not undermine his testimony as to his understanding while making the stop. What controls is his understanding at the time. And he testifies that, on the night of the stop, he believed Defendant Bembry was breaking the law by driving with a broken brake light. (Dkt. 45 at 13.) And, as the Magistrate Judge properly noted, Georgia courts have found his understanding reasonable despite any (apparent) discrepancy between the Georgia statutes.

18

(Dkt. 119 at 13–14.)  Finally, Defendant Bembry argues that "a correct reading of the statute" shows he did not, in fact, violate the law by driving his car with a broken rear brake light.  But again, what matters is whether the officer reasonably believed he had broken the law.  The Court adopts the Magistrate Judge's reliance on the Georgia court opinions to conclude he did.

## IV.  Conclusion

The Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 119) and **DENIES** Defendant Leterence Bembry's Motion to Suppress (Dkts. 23, 29, 31.)[3]

**SO ORDERED** this 5th day of June, 2026.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[3] The Magistrate Judge refused to address a motion to suppress statements Defendant Bembry raised in post-hearing briefs.  The Magistrate Judge made that decision because Defendant Bembry had not properly moved to suppress those statements and because the record did not reflect the exact statements he sought to suppress.  (Dkt. 119 at 7 n.3.)  Defendant Bembry objects and insists the record shows he was in custody and Sergeant Marinelli admitted he never notified Defendant Bembry of his *Miranda* rights.  (Dkt. 125 at 12-13.)  The Court agrees with the Magistrate Judge's determination that the issue was not properly raised and will address any *Miranda*-related issues at trial (and outside the presence of the jury).